**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

TRACY A. HENDERSON,                     Case No. 1:12-cv-208

       Plaintiff,                                    Spiegel, J.
                                                       Bowman, M.J.

   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Tracy Henderson filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. As explained below, the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed an application for disability insurance benefits ("DIB") in 2007, alleging a disability onset date of June 25, 2002 due to back pain. After her application was denied initially and on reconsideration, she requested a hearing de novo before an Administrative Law Judge ("ALJ"). On February 17, 2010, an evidentiary hearing was held before ALJ John R. Allen. Plaintiff appeared with counsel and provided testimony; a vocational expert also provided testimony. (Tr. 23-45). On May 13, 2010, the ALJ denied Plaintiff's application in a written decision. (Tr. 7-21).

Plaintiff's last insured date was December 31, 2007; therefore, she must show that she became disabled on or before that date.  The record reflects that she was 40 years old on the date she was last insured, and that she had performed no substantial gainful activity between her claimed onset date of June 25, 2002 through the date she was last insured.  (Tr. 12, 15).  Although Plaintiff's testimony was equivocal concerning her education (Tr. 28, 39), the ALJ determined that Plaintiff has at least a high school education, a conclusion that Plaintiff does not here dispute.  (Tr. 15; *see also* Doc. 6 at 7).  Prior to her alleged disability in 2002, Plaintiff had past relevant work as a lead worker and home health aide, but she can no longer perform that work.  (Tr. 15).

The record reflects that Plaintiff injured her back in March 1999, while working as a landscaping supervisor, when she was using a pitchfork to move some mulch.  The ALJ found that Plaintiff had the following severe impairment: "degenerative disc disease of the lumbar spine."  (Tr. 12).  In this proceeding, Plaintiff claims disability based solely upon severe back pain.[1]

Considering Plaintiff's allegations, the ALJ concluded that her claimed impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  (Tr. 13).  Instead, the ALJ determined that, between her disability onset date and the end of 2007, Plaintiff retained the residual functional capacity ("RFC") to perform a range of sedentary work, as further restricted by:

> [the ability] to lift or carry a maximum of 10 pounds occasionally.  In an eight-hour workday, the claimant could stand or walk for two hours and sit for six hours.  She needed to change position every 30 to 45 minutes but can stay on task.  The claimant could only occasionally climb stairs, stoop, kneel, crouch or crawl.  She could never use ladders, ropes or scaffolds.

---

[1]Although Plaintiff offered some testimony and evidence concerning depression, the ALJ noted that she did not initiate psychological treatment until June 2009, approximately 1 ½ years after her date last insured.  (Tr. 13).  Plaintiff does not challenge that finding in this appeal.

2

(Tr. 13).

Based upon the testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed," such that she was not under a disability, as defined in the Social Security Regulations. (Tr. 16-17).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff contends that the ALJ erred: (1) by failing to recognize that Plaintiff was not alleging disability retroactive to 2002 and/or by failing to fully consider the opinion of Dr. Kahn; (2) by failing to consider Plaintiff's post-surgery level of impairment; and (3) by rejecting Plaintiff's testimony concerning the disabling severity of her back pain.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. See 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported

by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can

perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. Plaintiff's Statement of Errors

Plaintiff's assertions of error relate to the fourth and fifth steps of the sequential analysis. Plaintiff challenges the ALJ's determination that, prior to the expiration of her insured status in 2007, Plaintiff retained the residual functional capacity to perform a limited range of sedentary work.

### 1. Plaintiff's Disability Onset Date

#### a. Dr. Kahn

Plaintiff's first statement of error is captioned as follows: "The ALJ erroneously concluded that Henderson had not been disabled since her alleged original onset date of June 25, 2002." (Doc. 6 at 10). Directly underneath that caption, Plaintiff clarifies that her argument is not that the ALJ erred in failing to find her disabled based on the date alleged in her application, but instead that the ALJ failed to recognize an informal constructive amendment to her application at the hearing. As Plaintiff explains to this Court, "Henderson was not alleging disability retroactive to June 25, 002, having acknowledged the credible evidence commenced with ESI injections in 2005, the referral to Dr. Kahn (2/20/06) which lead [sic] to surgery December 6, 2007." (*Id.*). Thus, while Plaintiff's argument is not entirely clear from her captioned list of errors, the body of her memorandum argues that the ALJ erred when he failed to find her disabled for a closed period of disability that occurred between 2006 and early 2008. In support of this argument, Plaintiff asserts:

> [T]here was an acknowledgement [that] treatment was limited as it relates from the claimed onset date in 2002 until the claimant commenced

5

> treatment with Dr. Kahn in 2006.  Specifically, Henderson is claiming disability consistent with the commencement of treatment with Dr. Kahn who assumed her medical care on February 20, 2006 leading to the surgery he performed on December 6, 2007…."

(Doc. 6 at 4).  In Plaintiff's reply memorandum, she states the argument even more plainly:  "Henderson claims she was disabled from all work for a period greater than twelve months commencing with her treatment with Dr. Kahn on February 20, 2006, extending through post op visits sometime in 2008."  (Doc. 8 at 3).

A significant shortcoming with this argument is Plaintiff's failure to show that she amended her onset date at any time, either in writing or verbally at the hearing.  The ALJ could not have been expected to infer that Plaintiff wished to formally amend her disability application from a claim of continuing disability starting in 2002, to a closed period commencing years later, merely on the basis of counsel's responses to the ALJ's query about the "scant" medical record prior to 2006.  (*See* colloquy at Tr. 26-27). Thus, the undersigned finds no error in the ALJ's review and discussion of evidence dating back to the disability onset date in 2002, and continuing up through the date of his decision.  As Plaintiff formally concedes in this appeal, substantial evidence supports the ALJ's determination that Plaintiff was not under a disability based upon her back condition and accompanying pain at any time from 2002 through at least February 2006, and that she also was not under a disability following her recovery from her December 2007 surgery.

Nevertheless, Plaintiff argues that even if she did not substantiate a disability consistent with her claimed onset date, the evidence of record reflects that her back impairment should be viewed as disabling "upon referral for surgical assessment and coming under the care of Dr. Kahn" until approximately 21 months later, when she was

6

granted authorization through the worker's compensation system to undergo the recommended surgery. (Doc. 6 at 4-5; Doc. 8 at 1 (referring to time period of 21 months)). Plaintiff complains that the ALJ approached his analysis "solely on the basis of an alleged onset date and not whether *there became a period* where Henderson was incapable of engaging in sustained remunerative activity…for a period greater than 12 months prior to the expiration" of her insured status. (Doc. 6 at 6, emphasis added). Dr. Kahn performed spinal fusion surgery on Plaintiff on December 6, 2007. Plaintiff now argues that the record supports a finding of disability on the basis of evidence that she was in an "acute status – pre-op, operative, and post-operative" "from March 2006 and through May 2008." (*Id.* at 6).

As support for this contention, Plaintiff contends that "[t]he ALJ recognized Dr. Kahn reported Henderson was disabled and unable to work and assessed her RFC at less than sedentary." (Doc. 6 at 17; *see also* Doc. 6 at 16, asserting that "[i]f the ALJ was not going to accept the conclusions of Dr. Kahn as to the inability to work when in an acute medical state pre operatively and post operatively," the ALJ should have re-contacted Dr. Kahn to obtain additional information). However, Plaintiff provides no citation to Dr. Kahn's purported RFC opinions or conclusions, or to the ALJ's supposed "recognition" of those opinions. Importantly, the undersigned finds absolutely no reference by the ALJ to any such opinions. Likewise, the undersigned finds that no specific RFC opinions were provided by Dr. Kahn, and that Dr. Kahn offered extremely few if any conclusions concerning Plaintiff's level of "disability" prior to the expiration of Plaintiff's insured status in 2007.

While Dr. Kahn never completed an RFC form or provided any opinions at all concerning Plaintiff's work-related functional limitations, and Plaintiff fails to bolster her argument with citation to the record, the undersigned has carefully reviewed all of Dr. Kahn's clinical notes in the interest of justice.  In so doing, the Court finds fleeting references by Dr. Kahn to short periods of "temporary total disability" primarily dating to early 2008, following Plaintiff's surgery.  However, it appears from a review of the records as a whole that Dr. Kahn's "opinions," such as they were, concerned Plaintiff's ability to return to past work in connection with her worker's compensation claim, without regard to Plaintiff's ability to perform other types of work.

Only one such reference predates Plaintiff's spinal fusion surgery and the expiration of Plaintiff's insured status.  A March 15, 2006 note reflects that Plaintiff "continues on temporary total disability for a further 3 months at this point while we are working through this," referring to Dr. Kahn's attempts to get worker's compensation approval for surgery, and waiting for Plaintiff to quit smoking prior to his willingness to perform the recommended spinal fusion surgery.  (Tr. 237).  While Dr. Kahn's references to "temporary total disability" are extremely brief and conclusory, in one note Dr. Kahn elaborates by explaining that he does not believe that Plaintiff can return to the type of "heavy work" she was previously engaged in, such as "going back into a factory where she was having to do any kind of repetitive bending, lifting, reaching, etc." but instead should look for "something such as a security guard or something of that nature." (Tr. 508).

The ALJ discussed Dr. Kahn's records in several areas of his opinion, (see Tr. 12-15), including Dr. Kahn's documentation of Plaintiff's initially excellent post-surgical

results. For example, in March 2008, Dr. Kahn recommended that Plaintiff "really walk vigorously." (Tr. 511). In April 2008, Plaintiff reported that she was doing well and could walk one mile at a time. In May 2008, Dr. Kahn recommended that Plaintiff look for work doing something that would require her to "walk a lot," since "sitting all day is not in her best interest necessarily." (Tr. 508). Similarly, on June 3, 2009, Dr. Kahn opined that Plaintiff is "really doing very well," and reiterated only that she "can never go back to heavy work" such as the "landscaping" work that led to her injury, but instead "needs to be on permanent disability" by "worker's comp." (Tr. 446).

In sum, the ALJ did not reject any clear "opinion" by Dr. Kahn as to Plaintiff's work-related functional limitations, because Dr. Kahn never offered any such opinions other than opining that Plaintiff should not perform "heavy" work. Here, the ALJ arguably accepted that opinion insofar as he restricted Plaintiff to a partial range of sedentary work. In addition, not every opinion uttered by a treating physician is entitled to "controlling" weight; the determination of a claimant's disability, is "reserved to the Commissioner." 20 C.F.R. §404.1527(d). Dr. Kahn's brief and conclusory references to "temporary total disability" arguably were limited to precluding her from her past "heavy" work, and do not appear to have been intended as opinions on Plaintiff's permanent functional abilities to perform any type of work at all. To the contrary, Dr. Kahn encouraged Plaintiff to look for less physically taxing work, even while simultaneously noting that she should be continued on "temporary total disability" for purposes of worker's compensation.

Last, despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other

substantial evidence, then the opinions need not be given controlling weight.  Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996).  To the extent that the ALJ should have discussed Dr. Kahn's references to "temporary" disability, his failure to do so was at most, harmless error in this case.  Where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions.  *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994).

To the extent that Dr. Kahn's clinical records yield any opinions at all about Plaintiff's functional abilities prior to the expiration of her insured status, then, the ALJ's RFC determination is consistent with Dr. Kahn's records.  The ALJ determined that Plaintiff retained the residual functional capacity to perform a partial range of sedentary work, within the restrictions provided in the RFC given to the vocational expert (including a sit/stand option).  (Tr. 16).  Based upon the testimony of the vocational expert, and in light of the additional medical evidence discussed below, the ALJ's decision that Plaintiff was not disabled is supported by substantial evidence.

In one last argument relating to Dr. Kahn, Plaintiff briefly argues that the ALJ erred by failing to re-contact Dr. Kahn to obtain additional information.  (Doc. 6 at 16).  However, as the Commissioner points out, the referenced regulation requires an ALJ to re-contact a treating physician only when an ALJ lacks sufficient information to make a determination, which was not the case presented here.  *See* 20 C.F.R. §404.1512(e).

### b. Other Medical Evidence

Other medical evidence in the record supports the RFC determined by the ALJ in this case.  The ALJ reviewed the objective medical records, which essentially reflect

10

mild findings, with minimal narrowing of the lumbosacral spine and an essentially normal x-ray (Tr. 289), MRIs showing mild to moderate abnormalities (Tr. 240-241, 516-517, 513), a normal EMG (Tr. 489-90, normal neurological exam, and only mild degenerative changes; *see also generally* Tr. 12-13).

Dr. Robert E. Frank, Jr., M.D., examined Plaintiff on April 14, 2007 and made virtually no objective findings, but opined that because of Plaintiff's reported subjective experience of severe pain, "she seems incapable of any type of work at the present time. For her to return to some type of sedentary work, her pain needs to be brought under better control." (Tr. 252). However, Dr. Frank also indicated that Plaintiff "had positive Waddell signs suggesting abnormal pain behavior." (Tr. 14, citing Tr. 490-491).

In formulating Plaintiff's RFC, the ALJ relied most heavily on the opinions of another consulting physician, Dr. Olayinka Aina, M.D.  Dr. Aina examined Plaintiff on July 9, 2007 for the Rehabilitation Services Commission for purposes of Plaintiff's disability claim. Consistent with the objective evidence, most of Dr. Aina's examination findings were normal (Tr. 321-326), although she did note a reduced range of motion in the dorsolumbar portion of the spine. (Tr. 323). Dr. Aina also noted "abnormal toe, heel and tandem walk." (Tr. 326). However, Dr. Aina opined that Plaintiff "should be able to lift, pull and push occasionally about 10-15 lbs, frequently about 5 lbs," apparently based upon Plaintiff's reported pain level. Dr. Aina indicated that "[p]rolonged standing and sitting *may be affected*" by Plaintiff's back pain, but offered no specific restrictions concerning the length of time that Plaintiff could stand or sit. (Tr. 326, emphasis added).

11

Based in part upon Dr. Aina's examination as well as a records review, non-examining consulting physician Dr. Gerald Klyop, M.D., completed a physical RFC form that identified more specific work limitations on July 25, 2007. (Tr. 327-334). In contrast to Dr. Aina, Dr. Klyop opined that Plaintiff could perform work at the medium exertional level by lifting and/or carrying up to 50 pounds occasionally, 25 pounds frequently, and stand and/or walk about 6 hours in an 8-hour workday. Dr. Klyop further indicated that Plaintiff could sit the same amount of time, and that her ability to push and/or pull was unlimited. (*Id.*). Dr. Klyop's RFC opinion was subsequently affirmed after review by consulting physician Dr. Nick Albert. (Tr. 403-404, 414-416). Dr. Albert noted that the physical findings found by Dr. Aina did not support the more restricted level of exertional limitations that physician determined, because Plaintiff "doesn't have any strength or sensory deficits," and has full range of motion in all extremities with only a slight decrease in range of motion of the lumbosacral spine. (Tr. 414).

The ALJ specifically rejected the opinions of Drs. Klyop and Albert on the basis that they improperly considered only objective findings, without regard to "the claimant's credible subjective symptoms." (Tr. 14). Instead, the ALJ adopted the more restrictive limitations offered by Dr. Aina, and addressed Plaintiff's reports of pain by limiting her to not more than 2 hours of standing or walking, and 6 hours of sitting, with a need to change positions as frequently as every 30-45 minutes.

On October 1, 2007, Plaintiff's chiropractor, Matthew Greene, DC, opined that Plaintiff's pain level is such that, until she has the recommended spinal fusion surgery, she "will have difficulty standing for greater than thirty minutes," or "sitting for longer than ten minutes." (Tr. 392). Dr. Greene also stated that Plaintiff "should lift no more

12

than ten pounds" and "should not bend on more than an occasional basis." (*id.*). The ALJ rejected Dr. Greene's opinions both on grounds that a chiropractor is not an acceptable medical source, and because the ALJ found that the opinions were "not supported by the record as a whole." Notably, on appeal to this Court, Plaintiff does not dispute the ALJ's rejection of her chiropractor's opinion.[2]

While not specifically discussed by the ALJ, it is worth noting that the decision also finds support in the opinions of several consulting physicians and Plaintiff's physical therapist. In fact, the opinions of the consulting physicians were less restrictive than the RFC ultimately determined by the ALJ. Following a consultative evaluation on September 30, 2006 relating to her worker's compensation claim, Dr. D. Scott Long, M.D. opined that Plaintiff "would be able to lift and carry up to 10 pounds on a frequent basis, occasionally up to 20 pounds, that Plaintiff could "frequently" sit, and "occasional[ly]" engage in "bending, twisting, turning, reaching below her knees, pushing, pulling, squatting, kneeling, standing, walking, and lifting about her shoulder." (Tr. 223). Dr. Long anticipated that Plaintiff would be so restricted only until following her scheduled back surgery. A similar evaluation by a physician (signature illegible) dated January 14, 2007 for the Bureau of Worker's Compensation opines that as of that date, Plaintiff is able to lift and carry up to 10 pounds occasionally, can squat/kneel, stand/walk occasionally, can lift above her shoulders occasionally, and can sit frequently. (Tr. 228).

Likewise, Dr. Richard Sheridan examined Plaintiff on April 12, 2007 in connection with her worker's compensation claim and found "sitting and standing stations are

---

[2] The RFC adopted by the ALJ is consistent with the weight restriction and bending limitation but greatly exceeds Dr. Greene's time restrictions on sitting.

13

normal," with "no abnormal rotation or flexion of the trunk to one side or the other in either position," and "no asymmetry that is apparent in weight bearing in either the sitting or standing positions." (Tr. 245). Dr. Sheridan recommended denying Plaintiff's request for surgery at the time. (Tr. 248). Last, the records of Plaintiff's physical therapist in April 2008 reflect a normal gait, that Plaintiff could walk for 45 minutes at a time, and that Plaintiff's reported pain level ranged from zero to four on a scale of zero to ten. (Tr. 510).

### 2. Rejection of Impairment Attributable to Post-Fusion Surgical Status

In her second numbered assignment of error, Plaintiff argues that "[t]he ALJ erroneously rejected the conclusions as to the impairment attributable to the diagnosis of status post fusion L4-S1." (Doc. 6 at 10). However, other than including this assignment of error as a caption in a numbered list of errors, Plaintiff includes no related argument in her memorandum. Conclusory assertions of error, lacking any argument or citation to the record, are waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997).

In any event, Plaintiff implicitly concedes that she was not disabled postoperatively, at least by some point in time in 2008. (*See* Doc. 8 at 3, arguing only that Plaintiff was disabled from February 2006 "through post op visits sometime in 2008"). Dr. Kahn's post-operative notes confirm that determination. (*See* Tr. 508, note dated 5/28/08 stating that Plaintiff is "really doing great," and that "[a]t this point, *she ought to go into a job search*")(emphasis added).

14

### 3. Credibility Assessment

Plaintiff's third assertion of error criticizes the ALJ's credibility assessment. She argues that the ALJ erroneously rejected her testimony as to the severity and "restrictivenes" [sic] of her back condition. (Doc. 6 at 10).

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

In this appeal, Plaintiff's claim is based upon her subjective complaints of severe back pain from February 2006 through some period of time in 2008. However, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of [her back pain] are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 14).

There is no question that pain alone, if the result of a medical impairment, may be severe enough in some cases to constitute disability. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981).  However, aside from Plaintiff's testimony and the limited references to "temporary" disability previously discussed, no treating or consulting medical source has ever opined that Plaintiff's credible back pain in this case is so severe that it precludes her from all work.

The ALJ properly considered all of the evidence in the record throughout the claimed period of disability –from 2002 through the expiration of Plaintiff's insured status at the end of 2007- as well as evidence that bore on Plaintiff's credibility up through the date of the hearing.  The ALJ discussed the opinions of a number of medical sources that, while offering restrictions, did not preclude Plaintiff from all work.  (Tr. 14-15).  He also discussed at length the relatively mild objective findings that did not fully support Plaintiff's claims of a disabling level of pain, (Tr. 12-13, 15), Plaintiff's course of treatment over the years, (Tr. 12-13), her activities of daily living and other evidence. (Tr. 14).  The ALJ specifically noted the "abnormal" pain findings made by Dr. Frank, including the positive Waddell signs, and that records reflected that Plaintiff was not always compliant with her treatment.  For example, she did not follow instructions to quit smoking – a precondition to Dr. Kahn performing surgery, based upon his report that smoking causes a 50% surgical failure rate.  She also did not always comply with physical therapy treatment.  (Tr. 15, 346, 398, 518).   All of these factors were appropriate for the ALJ to consider in determining Plaintiff's credibility and assessing her subjective complaints of pain.  The ALJ clearly gave partial credence to those complaints, rejecting RFC opinions that wholly ignored them, and including a sit/stand

option in Plaintiff's RFC. For the reasons discussed, substantial evidence supports the ALJ's determination that Plaintiff's allegations of *disabling* pain were not credible.

### III. Conclusion and Recommendation

For the reasons discussed, the ALJ committed no reversible error. Therefore, **IT IS RECOMMENDED THAT** the Commissioner's decision to deny Plaintiff DIB benefits be **AFFIRMED** and that this case be closed.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

TRACY A. HENDERSON,  Case No. 1:12-cv-208

    Plaintiff,  Spiegel, J.
                                                                                     Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).